NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF OKLAHOMA

Filed / Docketed
May 15, 2007

IN RE:

MV PIPELINE COMPANY,

          Debtor.

Case No. 07-80214-R
Chapter 11

**ORDER GRANTING MOTION TO REJECT
EXECUTORY CONTRACT WITH GM OIL PROPERTIES, INC.**

Before the Court is the Motion to Reject Executory Contract with GM Oil Properties, Inc. ("Motion") (Doc. 7) filed by the debtor in possession, MV Pipeline Company ("MV Pipeline"), on March 8, 2007, and the Objection of Gary Moores and G.M. Oil Properties, Inc. to Motion to Reject Executory Contract with G.M. Oil Properties, Inc. ("Objection") (Doc. 37), filed by Gary Moores ("Moores") and G.M. Oil Properties, Inc. ("GM Oil") on March 26, 2007. A hearing on the Motion and Objection were held on April 20, 2007, and April 23, 2007.

Upon consideration of the pleadings and briefs, the testimony and documentary evidence presented at the hearing, the arguments of counsel, and applicable law, the Court finds and concludes as follows:

**I.    Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

EOD: 5/15/07 by msp
Case 07-80214   Doc 80   Filed 05/15/07   Entered 05/15/07 17:21:53   Desc Main
Document    Page 1 of 8

## II. Findings of fact

MV Pipeline owns and operates a pipeline for the transportation of natural gas in McIntosh County, Oklahoma. The pipeline consists of approximately forty miles of underground steel pipe and connects and gathers natural gas. The stock of MV Pipeline is held by GM Oil (which, at the time relevant to this Motion, was wholly owned by Moores), Gene Stipe ("Stipe") and Eddie Harper ("Harper") in equal amounts. MV Pipeline's board of directors consists of Stipe, Harper, John Thetford and Ted Maxey. Harper is president and Stipe is vice president of MV Pipeline. Prior to May 30, 2005, Moores was president of MV Pipeline.[1]

Moores/GM Oil, Stipe and Harper acquired MV Pipeline in 1997. Since that time, Moores and GM Oil have managed and operated the pipeline. In 2003, during the pendency of litigation between the parties concerning the ownership of MV Pipeline and other joint venture properties, Stipe and Harper attempted to remove Moores/GM Oil from managing MV Pipeline by seeking a receiver, but the state court declined to substitute a receiver for GM Oil to operate the pipeline at that time on the ground that there was "no emergency

---

[1] In his testimony, and in briefing, Moores apparently refuses to acknowledge that Harper and Stipe, as majority shareholders, validly elected themselves, Thetford, and Maxey as directors and officers of MV Pipeline at a shareholders meeting held on May 30, 2005. Moores failed to present any evidence in support of any conceivable argument that Harper and Stipe, who hold two-thirds of the shares of MV Pipeline, do not hold the power to legitimately elect themselves, Thetford, and Maxey as directors and officers. See 18 O.S. § 1027.

2

existing jeopardizing the assets." Minute Order dated June 18, 2003, Docket Sheet, Movants Exh. A.

On January 21, 2004, Moores caused MV Pipeline to enter into a Management Agreement with GM Oil for certain management and financial services for a term of five years. Management Agreement, Movant Exhibit B, ¶¶ 1, 6. "Management services include but are not limited to operational advice and oversight, bookkeeping, and clerical and secretarial services." Id., ¶ 2. "Financial services include providing office space, equipment, facilities, and supplies and advancing funds necessary to pay the obligations of MV." Id., ¶ 3. In the Management Agreement, MV Pipeline promises to pay GM Oil $3,000 per month "to reimburse G.M. for providing MV with management services and office space, facilities, equipment, and supplies," which is payable at the end of each month, and if not so paid, unpaid amounts would bear interest at eight percent compounded quarterly. Id., ¶ 5.

In addition to delineating GM Oil's duties to MV Pipeline and MV Pipeline's obligation to pay GM Oil, the Management Agreement also purports to liquidate the amount of debt that Moores contends MV Pipeline owed Moores, GM Oil, Concorde Resources Corporation ("Concorde," an entity wholly owned by Moores), Stipe, and Harper in amounts set forth on Exhibit A to the agreement, and further provides that MV Pipeline will pay interest on that debt at a rate of eight percent, compounded quarterly, and commits MV Pipeline to pay the alleged debt "as quickly as possible or on demand." Id., ¶ 4. Exhibit A to the Management Agreement, which was prepared by Moores, asserts that as of January

21, 2004, MV Pipeline owed (1) Stipe $4,666; (2) Harper $4,866; (3) Moores $20,000; (4) Concorde $20,892.07; and (5) GM Oil $441,271.91. Id.

Moores executed the Management Agreement as president of MV Pipeline and as president of GM Oil. Moores did not consult with Stipe or Harper regarding his intent to bind MV Pipeline to the terms of the Management Agreement.

MV Pipeline disputes the validity of the Management Agreement because Moores unilaterally, and without board or shareholder approval, committed MV Pipeline to a contract with an entity owned by Moores,[2] and attempted on behalf of MV Pipeline to liquidate debts purportedly owed to Moores and his affiliated entities, the liability of which the majority shareholders of MV Pipeline disputed at the time Moores executed the Management Agreement, and continue to dispute at this time.

MV Pipeline does not contend that the $3,000 monthly fee is unreasonable, nor does MV Pipeline complain about GM Oil's field operation of the gas gathering system. MV Pipeline does, however, contest certain management decisions made by GM Oil, through Moores. For example, under GM Oil's management, MV Pipeline has implemented a discriminatory pricing structure which favors entities owned or controlled by Moores and which discourages further production in the area by third party producers whose production

---

[2]Rejection of the Management Agreement would not result its rescission nor would it settle the issue of whether the Management Agreement is a valid, enforceable contract. Rejection results in a breach of the contract as of the moment immediately preceding the filing of the petition, rendering damages for such a breach a prepetition claim. See 11 U.S.C. § 365(g)(1).

4

would increase the volume of gas transported by MV Pipeline and increase revenue accordingly. Moores also decided, on behalf of MV Pipeline, to decline to connect another third party producer to MV Pipeline's system unless that producer granted Moores an overriding interest. Moreover, Moores has refused to cooperate with MV Pipeline's majority shareholders with respect to providing books and records of corporate business, and has defied their authority as majority shareholders to control the assets of the corporation.[3]

## III. Conclusions of law

To determine whether to approve a debtor's decision to assume or reject an executory contract, courts analyze whether the debtor's decision reflects sound business judgment. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (recognizing the "business judgment test" as standard by which a request to reject a contract (other than a collective bargaining agreement) is evaluated by the court); In the Matter of Tilco, Inc., 558 F.2d 1369, 1372 (10th Cir. 1977). "Courts should defer to–should not interfere with–decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their business discretion." Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1046 (4th Cir. 1985). A debtor's decision to reject "is to be accorded the deference mandated by the sound business

---

[3] Additional detailed findings of fact regarding Moores/GM Oil's management of MV Pipeline are contained in the Memorandum Opinion issued in connection with the Order Denying Motion to Dismiss.

5

judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors."  Lubrizol, 756 F.2d at 1047.

Moores and GM Oil contend that MV Pipeline's motion to reject the Management Agreement was not made in good faith for the same reasons they sought to dismiss MV Pipeline's Chapter 11 case.  See Motion, ¶ 23-24; Motion to Dismiss Chapter 11 Petition Pursuant to 11 U.S.C. § 1112(b) as a Bad Faith Filing with Supporting Brief and Request for Evidentiary Hearing (Doc. 39).  The Court has denied Moores and GM Oil's motion to dismiss and has concluded that MV Pipeline did not act in bad faith in filing for bankruptcy protection because abundant evidence indicated that although MV Pipeline was financially distressed and was operating at a loss, MV Pipeline held unique and valuable assets, the operation of which could be reorganized under the auspices of a Chapter 11 proceeding to realize profits rather than losses for the benefit of creditors and shareholders, as well as for the other constituents of the local natural gas community.  For the same reasons stated in the Memorandum Opinion and Order Denying Motion to Dismiss, the Court concludes that this Motion was also filed in a good faith effort to rehabilitate MV Pipeline.

Moores and GM Oil also argue that Harper and Stipe have no experience or qualifications to operate a natural gas pipeline, and therefore rejection of the Management Agreement will harm rather than benefit MV Pipeline.  Harper testified, however, that MV Pipeline would employ a petroleum engineer, Sid Risner, to evaluate the management and operation of the system and make recommendations to the board with respect to developing a stand-alone viable, profitable, gas gathering system.  Mr. Risner testified that he is willing

6

to assume the responsibility to operate the gas gathering system if Moores is removed or resigns as operator.[4] Mr. Risner has extensive knowledge, experience and contacts in the oil and gas industry, is qualified to provide management and operational advice and is capable of obtaining qualified personnel to operate the gas gathering system and to perform the necessary accounting and financial services. Mr. Risner testified that he would provide operations services for $3,000 per month. While Mr. Risner is not willing to advance expenses, as Moores/GM Oil does under the Management Agreement, Harper testified that he and Stipe were willing to loan to MV Pipeline, on an unsecured basis, up to $50,000 for operational and reorganization purposes, and the Court has approved such financing.

Further, certain conduct of GM Oil, through Moores, has caused the directors and management of MV Pipeline to lose confidence and trust in GM Oil's ability to manage MV Pipeline for the benefit of all shareholders.[5] MV Pipeline's president desires to replace one operator, GM Oil, with another operator, Sid Risner, who has appeared before the Court and who is willing to assume the responsibility of maintaining the pipeline operations while evaluating MV Pipeline's business opportunities and providing managerial advice to MV

---

[4]Mr. Risner is prepared to comply with all testing, safety and reporting requirements of an gas gathering system operator set by the Oklahoma Corporation Commission. He testified that he would contract out accounting and field work, but would endeavor to retain as many current field personnel as possible.

[5]For instance, without consulting with Harper or Stipe, Moores executed, on behalf of MV Pipeline as Grantor, a Non-Exclusive Assignment of Rights-of-Way (MV Exhibit 16) purporting to assign to GM Oil an easement over all rights of way acquired by MV Pipeline. Moores/GM Oil also declined, on behalf of MV Pipeline, to connect a third party gas producer to the pipeline unless it granted Moores/GM Oil an interest in the lease.

7

Pipeline's officers and directors. In absence of bad faith or a gross abuse of discretion, and in light of sound business reasons for removing Moores/GM Oil from exercising exclusive control over MV Pipeline's assets, the Court defers to the informed business judgment of the officers and directors of MV Pipeline. The Court concludes that MV Pipeline's decision to reject the Management Agreement is not so manifestly unreasonable that it is the product of bad faith, whim, caprice, or an abuse of business judgment.

### IV. Conclusion

The Motion is therefore **granted**.

**SO ORDERED** this 15th day of May, 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT